## PRICE RECEIVED AT AUCTION AS EVIDENCE OF THE MARKET VALUE OF REAL PROPERTY.

### Superior Court of Cincinnati.

### JOHN H. LUCKE ET AL V. HENRY EISENSTADT ET AL.

#### Decided, December 9, 1914.

*Evidence—Breach of Contract to Purchase—Value of the Property Involved—As Evidenced by Price Received at Re-Sale—Value of Vendee's Right to Purchase, Distinguished from Market Value of Property.*

In an action between vendor and vendee for damages for refusal to perform a contract to purchase real estate, the price obtained by. the vendor on re-sale of the property at auction, after notice to vendee, will be received as some evidence tending to show market value, provided the conditions surrounding such re-sale and the terms thereof are such as to appear to be fair and reasonable, although the terms of such re-sale are not identical with the terms of the original contract of sale nor as favorable to the purchaser.

*Alfred Bettman* and *John D. Ellis,* for plaintiffs.

*D. S. Oliver,* for defendants.

MERRELL, J.

This action was brought for damages upon the defendants' breach of a written contract to purchase of the plaintiffs certain residence property. Upon defendants' refusal to proceed under the contract and to pay the purchase price, the plaintiffs, through real estate agents, advertised the property for sale at public auction, and it was sold at a price less than that of the original contract of sale.

At the trial, evidence was admitted over the defendants' objection, of the price obtained upon such re-sale at auction. There was also evidence of real estate experts as to the market value of the property at the time of the defendants' breach of contract to purchase, but the verdict returned (for the plaintiffs) was in a sum representing the exact difference between the price under the original contract and that obtained on re-sale.

If the evidence as to price obtained on re-sale was incompetent, the verdict can not stand.

As to this evidence, it is contended, (1) that testimony as to price obtained on re-sale is not competent at all. This doctrine obtains in Georgia and perhaps in New York. (2) It is also contended that if the price at re-sale is competent evidence in any case, it is so only when the terms upon which the property is offered at re-sale are at least as favorable as those of the original contract. This is the view held in a number of jurisdictions, notably Pennsylvania and New Jersey. Annotations to. *Cowdrey v. Greenlee* (Ga.), 8 L. R. A. (N. S.), 137; *Ramsay v. Hersker,* 153 Pa. St., 480.

In the case at bar the terms of the re-sale at auction required of the purchaser a larger cash payment and a shorter time for deferred payments than did the original contract of sale upon which suit was brought. The original contract required the payment of about one-sixth of the purchase price in cash, whereas the terms of the auction required one-half cash. Under the Pennsylvania rule, therefore, the testimony as to price obtained at re-sale would have been excluded. So far as the court is advised the question has not been authoritatively passed upon in this state, so that it may be determined upon principle rather than by precedent. It is, of course, entirely clear that the measure of damages in such case is the difference between the contract price and the market value of the property at the time of the vendee's breach. The only question, therefore, is whether the price obtained at re-sale is some evidence of market value. The weight of authority, both in England (*Noble v. Edwards,* L. R. 5 Ch. Div., 378) and in this country, is that the price obtained on re-sale is, under certain conditions, competent evidence of market value. In most jurisdictions, in this country, however, such evidence is received only in cases where the terms of re-sale are as favorable as those of the original contract. This limitation is thought to be the result of a confusion of ideas—a confusion in brief, between what is evidence and the rule of damages. In fact, in some jurisdictions where the evidence is received within the limitation indicated, the courts have said that the vendor has

a right to re-sell the property at the vendee's risk, or have at least indicated that the vendor's loss upon re-sale is *prima facie* the measure of damages.  If this be indeed the measure of damages in such case, it is quite clear that the price received upon re-sale is of probative force only where the terms of re-sale are at least as favorable as those of the original contract.  In this state, however, no such *rule of damages* obtains, and evidence of whatever description is competent only *as evidence* for the consideration of the jury in working out the true measure of damages which is the difference between the contract price and the market value.

It follows that if the price obtained at re-sale is competent at all, it is so simply as some indication of the true market value. The only proper limitation, therefore, upon the admission of evidence of the price obtained at re-sale, is that the terms of re-sale shall be reasonable and such as would probably result in as favorable a bid as the value of the property will admit of.  To limit the evidence to cases where the terms of re-sale are identical with the terms of the contract is to permit evidence, not of the market value of the *property*, but of the market value of the vendee's *contract right* to purchase.  Market value is, theoretically at least, a definite and fixed sum.  It is not a variable dependent upon the terms of sale.  This is commonly recognized in receiving the testimony of experts as to value, the opinion of such expert being received as to the market value at a given time, and not his opinion as to what price would be obtained for the property under varying conditions and terms of sale.

It follows that in the case at bar the testimony as to price obtained on re-sale at auction was competent, although the terms of the auction were perhaps not as favorable to the purchaser as the terms of the original contract.  It is always a question for the court in passing upon the admissibility of such evidence, to determine as a matter of fact whether the terms and conditions of re-sale were sufficiently fair and reasonable to permit the price obtained being considered by the jury.  In the present case, the publicity given to the auction, the terms of sale, the number of bidders attending, and the notice of the sale both to the public

and to the defendants, were such that the court determined as a matter of fact, and properly, it is thought, that the evidence was competent for the consideration of the jury.

The petition in this case counted, of course, upon the written contract, which at the trial turned out to have been accidentally destroyed by fire after the bringing of the suit. On this motion for a new trial it is contended that the plaintiffs should have declared upon a lost contract or before trial should at least have amended the petition so as to advise the defendant that the contract had been destroyed. This contention is based upon the case of *Chamberlain* v. *Sawyer,* 19 Ohio, 360, where it was held that a declaration averring the existence of a bond and making profert thereof was not sustained by proof of a lost bond. The principle of the case cited should not, and does not, extend farther than to actions upon a specialty such as a bond or a note. The common law principle of profert does not apply to ordinary contracts. Moreover, in the present case, the defendants did not at the trial claim surprise and the objection comes too late when first made on motion for a new trial.

Other grounds urged in support of the motion were sufficiently dealt with at the oral hearing.

The motion for a new trial is overruled.